BONO SAWDUST SUPPLY COMPANY, Respondent, *v.* HAHN & GOLIN et al., Appellants.

Second Department, February 18, 1957.

*J. Jacob Hahn, Reuben Golin* and *George A. Hahn* for appellants.

*Harris Birnbaum* for respondent.

WENZEL, J.  Plaintiff, in its complaint against a law firm and a corporation, seeks to recover a money judgment for damages allegedly sustained as the result of the service upon a bank of a third-party subpœna in proceedings supplementary to judgment, an effect of which service was to restrain the bank from paying out money from plaintiff's account in said bank (see Civ. Prac. Act, §§ 779, 781).  The basis for the issuance of the subpœna was a judgment for a sum of money which had been entered in a previous action in the City Court of the City

of New York in favor of the defendant corporation against plaintiff, in which action the defendant law firm had represented the defendant corporation, and the bases of the contention that a tortious wrong was committed by defendants are that the judgment contained a provision staying issuance of execution for a stated time and that the subpœna was served before the expiration of that time; and that, despite plaintiff's subsequent furnishing of an undertaking in connection with an appeal from the judgment, defendants refused to release the funds in plaintiff's bank account and sought to delay ultimate release of the funds by applying for an adjournment of plaintiff's ensuing motion to vacate the subpœna.

The complaint alleges that the judgment against plaintiff was entered on May 24, 1956 and that it contained a provision staying issuance of execution immediately and for five days after service of a copy of the judgment upon the judgment debtor's attorney. (Civ. Prac. Act, § 615, authorizes the granting of such stay without requiring the furnishing of security.) The complaint further alleges that the judgment was not served until it was mailed to plaintiff's attorneys in the evening of May 25, 1956 (a Friday) and that defendants served the third-party subpœna before service of the judgment and that they did so " wilfully, wantonly, maliciously and wrongfully "; that at the time of the entry of the judgment defendants knew that the plaintiff and each of the three partners in the plaintiff firm respectively owned property of stated general description and that they " were financially sound and well able to pay the said judgment many times, if required "; that on May 28, 1956, " the next business day " after the mailing of the judgment, " a surety company bond in full compliance with the provisions of the Civil Practice Act providing for surety bonds on appeal " was obtained and that a copy of the bond and a copy of a notice of appeal were delivered to the defendant law firm in the late afternoon of that day, and the " papers " were filed the following day, and that immediately upon the service of the bond and the notice of appeal defendants were requested to " release the aforesaid funds in the said bank account ", but defendants " wilfully, wantonly, maliciously and wrongfully refused " to do so, or to notify the bank that a bond " staying all further execution had been served " and that " all further proceedings " to collect the judgment " were stayed ", or " to take any further steps in the furtherance of the said stay of execution." It is then alleged that plaintiff procured an order to show cause on May 31, 1956 returnable June 1, 1956, to vacate the subpœna; that defendants " wilfully, wantonly, maliciously and wrongfully " applied for an adjournment of

that application on the said return day "for the purpose of continuing the restraint on the funds"; that the request for adjournment was "not founded upon any legal ground warranting the granting of any adjournment", and that the request for adjournment delayed the decision of the court, "which was not obtained until the afternoon of June 1st, 1956." Allegations follow that the said bank account funds "were the only liquid funds immediately available to these plaintiffs at this time without their undertaking additional expense", that "defendants were fully and completely protected in their judgment to the full extent thereof and had no valid or legal reason for continuing the restraint on the funds", and that plaintiff suffered damage.

Prior to the 1935 revision of article 45 of the Civil Practice Act (L. 1935, ch. 630), which article deals with proceedings supplementary to judgment, lawful and proper commencement of a proceeding under that article was conditioned on prior or simultaneous issuance of execution (see Civ. Prac. Act, §§ 773, 775, 779, 780 and 785 as they read prior to the said revision), except that, beginning in 1932, by reason of the enactment of section 773-a in that year (L. 1932, ch. 452), a subpœna was permitted to be issued for service on the judgment debtor only, regardless of whether or not execution had been issued. There was no statute expressly forbidding commencement of supplementary proceedings during the operative period of a stay of execution without bond. Nevertheless, except for the proceeding under section 773-a, it was not possible to commence such proceedings lawfully and properly in a case where the judgment upon which they would be based contained such a stay against issuance of execution, at least during the operative period of the stay, and so it was not necessary for the Legislature to enact a statute expressly stating its intention that the commencement of supplementary proceedings under such circumstances was prohibited. When the Legislature enacted said section 773-a it included therein a provision that the remedy added by the section "shall not be available while the enforcement of" the basic judgment "is stayed". The inclusion of that provision indicates that the Legislature was being careful to continue the practice of forbidding the commencement of supplementary proceedings upon a judgment so long as execution upon the judgment was stayed.

However, the 1935 revision, which changed the title of article 45 from "Proceedings Supplementary to Execution" to "Proceedings Supplementary To Judgment", eliminated the provisions making issuance of execution prerequisite to the commencement of supplementary proceedings, and also elimi-

nated the provision which denied the use of the remedy afforded by section 773-a if execution on the basic judgment was stayed (see *Utilities Eng. Inst.* v. *Mangan,* 276 App. Div. 922). This was a clear indication of intention that a stay of execution without undertaking was no longer to be a bar to the commencement of supplementary proceedings and that such proceedings could be commenced independently of execution.

In contrast to what the Legislature did as to the relationship between supplementary proceedings on the one hand and executions and stays of execution without undertaking on the other hand, it continued to bar commencement of such proceedings upon the furnishing of an undertaking by the judgment debtor in connection with his appeal from the basic judgment. By the provisions of section 594 of the Civil Practice Act, upon an appeal to the Court of Appeals from a judgment for a sum of money only, or from a judgment or order directing the payment of a sum of money only, execution is stayed by furnishing an undertaking for costs and damages which might be awarded on the appeal (as to the contents of such undertaking, see § 593) and an undertaking for payment of the judgment itself. By the provisions of section 615, upon an appeal to the Appellate Division from such a judgment or order of the Supreme Court, execution is stayed by furnishing similar undertakings. By section 626, these provisions as to appeals to the Appellate Division in an action in the Supreme Court are made generally applicable to appeals taken to the Appellate Term of the Supreme Court or to the Appellate Division from an inferior or local court, which would include the City Court of the City of New York. Further, by the provisions of section 573, upon the perfecting of an appeal to the Appellate Term or to the Appellate Division or to the Court of Appeals and where " the other acts required to be done to stay the execution of the judgment or order appealed from have been done [patently referring, *inter alia,* to the furnishing of the undertakings contemplated by sections 593, 594 and 615], the appeal stays all proceedings to enforce the judgment or order appealed from ".

Thus, upon the furnishing of such undertakings in connection with such perfected appeals, a stay is effectuated not only as to execution but as to " all proceedings to enforce the judgment ", which would include supplementary proceedings. Further, the Legislature has given differing effects to a stay of execution which a court may grant by order and to a stay which is obtained without order, e.g., by furnishing security. The Legislature has extended the latter, as stated above, to apply not only to execution but to " all proceedings to enforce

the judgment ", and has limited the former to application only against the remedy of execution.

There appears to have been a definite reason for this distinction. For some time up to the 1935 revision of article 45 of the Civil Practice Act actual collection of a large percentage of judgments had become difficult, and even unlikely of accomplishment. The procedure for collection had proved ineffective, and the formal requirement that execution issue as a foundation for supplementary proceedings had in the main become wasteful. As a result, there was a call for remedial legislation in the field of supplementary proceedings, not only to give a judgment creditor enlarged and additional remedies in such proceedings, but also to ease his burden in commencing and maintaining them. However, in cases where adequate security was given by undertakings as above mentioned, there was obviously no need to give a judgment creditor such relief from the old restrictions as to procedures for collection of judgment. Moreover, in such cases there would be no reasonable basis for permitting a judgment creditor to avail himself of supplementary proceedings. To be sure, even a stay of execution granted by the court without an undertaking gives a judgment creditor some assurance that the judgment debtor will not transfer his assets during the period of the stay to the prejudice of the judgment creditor, since such transfer might lead to the judgment debtor's being adjudged in contempt of court (*Hunter* v. *National Transp. Co.*, 273 App. Div. 487; *Fass & Wolper* v. *Burns*, 177 Misc. 430). Nevertheless, it is conjectural whether such adjudication of contempt of court, in the case of such a transfer of assets, would actually result in restoration of the *status quo*. Accordingly, it is apparent that the Legislature intended to give a judgment creditor freedom of action in supplementary proceedings, as a surer safeguard against successful evasion of collection of his judgment, despite a stay of execution without an undertaking and despite the possibility of an adjudication of contempt of court in the event of a transfer of assets during the period of the stay. Had the Legislature intended otherwise, it could have used verbiage similar to that used in 1932 when it enacted section 773-a (now repealed) namely, that supplementary proceedings " shall not be available while the enforcement of * * * judgment is stayed."

Accordingly, it is our opinion that the issuance of the subpœna in this case was not enjoined by the stay of execution in the judgment, but was lawful and proper under sections 779 and 781 of the Civil Practice Act.

Since the complaint does not allege that the subpœna or any other process was improperly used after issuance, or perverted to the accomplishment of an improper purpose, the complaint cannot be upheld as stating a cause of action for abuse of process (see *Hauser* v. *Bartow,* 273 N. Y. 370; *Dean* v. *Kochendorfer,* 237 N. Y. 384; *Assets Collecting Co.* v. *Myers,* 167 App. Div. 133). Allegations that the process was used with malice, even assuming the presence of properly pleaded factual statements to such effect, would not cure the defect in the pleading (*Hauser* v. *Bartow, supra,* p. 374).

The allegations of malice and damage, assuming *arguendo* that they are properly pleaded, do not support plaintiff's contention that the complaint sets forth a cause for prima facie tort. Prima facie tort is the " 'intentional infliction of temporal damage * * * which * * * requires a justification if the defendant is to escape.' " (*Advance Music Corp.* v. *American Tobacco Co.,* 296 N. Y. 79, 84.) That there was justification for issuance of the subpœna appears on the face of the complaint. Defendants had the right to avail themselves of any remedy which the Legislature provided as a means of or an aid in collecting their judgment. Since they used their remedy only for the purpose permitted by the Legislature it cannot be gainsaid that the use of the remedy was justifiable.

No requirement of law placed any duty upon defendants to do anything with respect to terminating the restraint effectuated by service of the subpœna. They violated no law in applying for an adjournment of the motion to vacate the subpœna. Accordingly, the complaint may not be upheld on the basis of the allegations as to these matters.

The order should be reversed, with $10 costs and disbursements, and the motion should be granted, with $10 costs.

Nolan, P. J., Beldock, Ughetta and Kleinfeld, JJ., concur.

Order reversed, with $10 costs and disbursements, and motion granted, with $10 costs.